UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Trevor H. | ) | 3:20-CV-1540 (KAD) |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Kilolo KIJAKAZI,[1] | ) | APRIL 25, 2022 |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
|     *Defendant*. | ) | |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge:

The Plaintiff, Trevor H. ("Plaintiff"), brings this administrative appeal pursuant to 42 U.S.C. § 405(g). He appeals the decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Administration"), denying his application for disability insurance pursuant to Title II of the Social Security Act (the "Act"). Plaintiff moves to reverse the Commissioner's decision insofar as the Administrative Law Judge ("ALJ") failed to consider his inability to maintain proper hygiene as a contributing factor to his disability, and that the ALJ violated the "treating physician rule" when weighing the opinion of his treating physician. Alternatively, he seeks a remand for further proceedings before the Commissioner. In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is based upon the correct application of legal standards, and thus should be affirmed. For the reasons set forth below, the Plaintiff's Motion for Judgment on the Pleadings, ECF No. 22, is DENIED and the Commissioner's Motion to Affirm, ECF No. 31, is GRANTED.

---

[1] At the time the Plaintiff commenced this action, Andrew Saul was the Commissioner of Social Security. On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security and is therefore substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

1

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations[2]; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform his past relevant

---

[2] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

work; and (5) if the claimant is unable to perform his past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1520(a)(4)(i)-(v); 404.1509. The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there

is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Factual and Procedural History**

On June 30, 2016, Plaintiff filed an application for Supplemental Security Income ("SSI"), and on July 11, 2016, for Child's Insurance Benefits ("CIB"), both under Title II of the Act.[3] Plaintiff originally alleged a disability onset date of October 28, 1999, which he later amended to August 16, 2014. His claim was initially denied on August 15, 2016, and a subsequent Request for Reconsideration was denied on November 14, 2016. On January 26, 2018, at Plaintiff's request, a hearing was held, after which the ALJ issued a decision denying the application. Thereafter on May 15, 2019, the Appeals Council vacated that decision and remanded the case for further proceedings. Upon remand, a second hearing was held on September 11, 2019.[4] On October 17, 2019, the ALJ issued a decision denying the application and finding that the Plaintiff was not disabled. That decision became final on August 14, 2020, when the Appeals Council denied Plaintiff's request for further review.

In his written decision, the ALJ followed the sequential evaluation process for assessing disability claims.[5] At Step One, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the earlier onset date of October 28, 1999. At Step Two, the ALJ determined that Plaintiff had multiple severe impairments: depressive disorder, bipolar disorder, schizoaffective disorder, and anxiety disorder. At Step Three, however, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1. At Step Four, the ALJ found that Plaintiff has the

---

[3] The regulations for CIB are found at 42 U.S.C. §402(d) and 20 C.F.R. § 404.350, *et seq.*; the regulations for SSI are found at 42 U.S.C. §§ 1381-1383 and 20 C.F.R. § 416.101, *et seq.*
[4] It was at this hearing that Plaintiff changed his alleged disability onset date to August 16, 2014.
[5] *See supra.*

4

RFC to perform a full range of work at all exertional levels subject to several non-exertional limitations, to include that Plaintiff could perform simple, routine and repetitive tasks and sustain concentration, persistence and pace for two-hour segments; that Plaintiff can tolerate only brief and superficial interactions with coworkers and no interactions with the public; and that he must perform no work requiring independent judgment making (so that he cannot set duties or schedules or have responsibility for the safety of others). And lastly, at Step Five, the ALJ determined that Plaintiff had no past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.[6] Accordingly, the ALJ concluded that the Plaintiff was not disabled under Sections 223(d) and 1614(a)((3)(A). This timely appeal followed.

**Discussion**

Plaintiff advances two primary arguments in his appeal. He first argues that the ALJ failed to properly consider Plaintiff's poor hygiene in the determination of the severity of his impairment and in his RFC, at Steps Three and Four, respectively. He next argues that the ALJ failed to afford the proper weight to the opinion of Plaintiff's treating physician, Dr. Berkowitz, in violation of the "treating physician rule."[7]

In response, the Commissioner argues that Plaintiff's difficulty maintaining good hygiene did not render him disabled and that the ALJ correctly weighed the medical-opinion evidence of Dr. Berkowitz. The Court agrees with the Commissioner.

---

[6] These were identified by Christine Spaulding, the Vocational Expert ("VE") who testified at the September 11, 2019 hearing, as: (1) cleaner (DOT # 323.687-010), medium exertional level, unskilled, with a specific vocational preparation factor of two, with 20,500 jobs nationwide; (2) cleaner (DOT # 323.687-014), light exertional level, unskilled, with a specific vocational preparation factor of two, and 65,000 jobs nationwide; and (3) hand packer (DOT # 920.587-018), medium exertional level, unskilled, with a specific vocational preparation factor of two, with 42,000 jobs nationwide.

[7] Under C.F.R. § 404.1527, which controls applications for benefits filed before March 27, 2017, if the Administration "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," that medical opinion will be given "controlling weight." C.F.R. § 404.1527(c)(2). Plaintiff's application was filed on July 11, 2016, so this case is subject to the treating physician rule.

1. <u>The ALJ Properly Considered Plaintiff's Poor Hygiene at Step Three</u>

At Step Three, Plaintiff bears the burden of providing medical evidence to demonstrate that his impairment(s) "meet *all* of the specified medical criteria" comprising a listing in the Administration's regulations. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Regardless of severity, an impairment that satisfies *some* of the listed criteria does not qualify as a disability for purposes of receiving benefits. *See id.* at 530 (emphasis added).

Plaintiff argues that he has a "significant ongoing, continuous problem with poor hygiene," which the ALJ failed to consider as a functional limitation that could—on its own—preclude him from maintaining substantial gainful activity. Plaintiff argues that the ALJ failed to take this into consideration when examining Paragraph B criteria of listing 12.04 (depressive disorder) and listing 12.06 (anxiety disorder).[8] Mental impairment listings such as 12.04 and 12.06 require a claimant to meet medical criteria set forth in Paragraph A *and* Paragraph B or C. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04, 12.06. To satisfy the Paragraph B criteria, a claimant must establish at least one "extreme" or two "marked"[9] limitations in a broad functional category, of which there are four. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.00A; 20 C.F.R. § 404.1520a(c)(3). A limitation is "extreme" if it represents a degree of limitation that is incompatible with the ability to do any gainful activity. *See* 20 C.F.R. § 404.1520a(c)(4).

The functional categories are understanding, remembering, or applying information; interaction with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Included in the last category is "maintaining personal hygiene and attire appropriate to a

---

[8] The purpose of the listings is to define impairments that would prevent an adult, regardless of age, education, or work experience from performing any gainful activity. *See Zebley*, 493 U.S. at 532. An ALJ's inquiry into the listings helps identify claimants whose medical impairments are so severe that they would likely be found disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).
[9] These terms are two of five on a scale of limitation, including "none," "mild," "moderate," "marked," and "extreme." *See* 20 C.F.R. § 404.1520a(c)(4).

work setting." *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(4). The ALJ found that Plaintiff was no more than moderately limited in any of the four categories, and therefore that his impairments did not satisfy the Paragraph B criteria. Although the ALJ acknowledged Plaintiff's "malodorous and disheveled presentation at mental health visits," the Plaintiff demonstrated "fair insight and judgment at numerous examinations," leading the ALJ to conclude that Plaintiff has "moderate limitations in adapting or managing himself." Tr. at 20.

Plaintiff argues, however, that because his struggles with personal hygiene are continuous and habitual, they alone support a finding of disability at Step Three because they establish an extreme limitation in the functional category of adapting and managing oneself. Plaintiff cites to the VE's "clear and unequivocal" testimony that habitual malodor would preclude gainful employment. Pl. Mot. at 12, ECF No. 22-1. During the September 2019 hearing, Plaintiff's attorney asked the VE what would happen if "somebody…shows up to work, and they obviously haven't showered in three weeks." Tr. at 137. The VE testified that if an employee habitually exuded body odor at work, that it "would not be tolerated long-term" and that the employee would "likely be spoken to" and a "progressive disciplinary process" would ensue. *Id.* Plaintiff's reliance on this exchange with the vocational expert is misplaced. First, the VE's testimony is not clear and unequivocal that habitual malodor prevents the ability to do *any* gainful activity, as would be required to establish an extreme limitation in managing oneself. To the contrary, the testimony indicated that an employee who came to work after not showering for three weeks would likely begin a progressive disciplinary process. And although such a practice would not be "tolerated long term," it is wholly speculative that the progressive disciplinary process would be unsuccessful

7

at addressing the practice. And Plaintiff provides no other authority beyond this flawed interpretation of the VE's testimony to support a finding that he has an extreme limitation.[10]

But the bigger problem with Plaintiff's argument is that the hypothetical question on which he relies does not derive from the record evidence. There is simply no evidence to support the assertion that Plaintiff has ever gone three weeks without showering, let alone that he does so on a regular basis. Nor does the record find support for the VE's re-phrased hypothetical individual who "habitually exuded body odor at work." Plaintiff testified at the September 2019 hearing as follows:

> Q: … you're not so good about your hygiene, are you?
>
> A: Not really.
>
> Q: Okay, You've been  -- had to be told at the group that you needed to --
>
> A: Yes.
>
> Q: -- shower and bathe.
>
> A: Yes.
>
> Q: And your mother stays on top of you to shower and bathe --
>
> A: Yes. Yes.
>
> Q: Why don't you think you've shower and bathe by yourself?
>
> A: I don't know.
>
> Q: You know you need to do it.
>
> A: I, I know. I just don't do it as often as I should.

---

[10] 20 C.F.R. §§ 404.1529(a), 416.929(a) explain that the Administration will "determine the extent to which [a claimant's] alleged functional limitations and restrictions…can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence" in deciding how symptoms affect one's ability to work. The Administration cannot do so without any medical signs, laboratory findings or other evidence. Plaintiff also fails to provide a single legal citation to support his argument that poor hygiene is an impairment that could render someone disabled.

Tr. at 120. And although the record reflects that at various times Plaintiff was malodorous during his mental health appointments, the frequency with which he bathes is nowhere documented nor are the references so common as to reflect a habitual exuding of body odor. So even if the VE testimony could be read to suggest that such a person would have an "extreme" limitation in the functional area of adapting and managing oneself, the testimony has no bearing on this Plaintiff's Step Three analysis.

And while it is clear from the record and his testimony that Plaintiff struggles to maintain proper hygiene, the ALJ's determination that Plaintiff had only a moderate limitation in this area is supported by substantial evidence.[11] The ALJ cited to a myriad of treatment notes that characterized Plaintiff's appearance as "normal" or "well groomed." *See, e.g.,* Tr. at 20, 713, 798, 803, 810, 815, 955, 983, 990, 997. He also relied upon mental-status examinations that demonstrated Plaintiff's fair insight and judgment. *See e.g.,* Tr. at 19–20, 636, 647, 707, 743, 746, 749, 752, 850, 907. Finally, the ALJ relied upon records that "showed that ongoing mental health therapy and medication management diminished the symptoms and signs" of Plaintiff's disorders. Tr. at 20. *See also Dianne L.S. v. Commissioner of Social Security,* 2021 WL 1169180, at *4 (W.D.N.Y. Mar. 26, 2021) (finding no error at Step Three where an ALJ determined claimant's hygiene limitation was "mild" when some treatment notes reflected adequate hygiene and others indicated strong body odor during physical examinations).

For these reasons the Court concludes that there was no error at Step Three.

2. The ALJ Properly Considered Plaintiff's Poor Hygiene in Determining RFC at Step Four

Plaintiff next argues that the ALJ, in establishing his RFC at Step Four, minimized his poor hygiene and incorrectly addressed it by including a limitation on how much contact he could have

---

[11] As indicated above, an extreme limitation prevents a claimant from doing *any* gainful activity. *See* 20 C.F.R. § 404.1520a(c)(4).

with coworkers and the public.[12] Pl. Mot. at 16. The Commissioner argues, however, that the ALJ's RFC finding is supported by substantial record evidence. The Court agrees.

A claimant's RFC is the most he or she can still do despite any limitations, which the Administration assesses based on all relevant evidence in the record. *See* 20 C.F.R. § 404.1545(a)(1). When assessing a claimant's RFC, and ALJ may "exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Barry v. Colvin*, 606 Fed. App'x 621, 622 (2d Cir. 2015). In his or her assessment, an ALJ must consider statements made by the claimant or others about any impairments as well as the claimant's restrictions, daily activities and efforts to work. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Ultimately, however, the claimant bears the burden of demonstrating any functional limitations. *See* 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); *see also Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (finding that the Commissioner need not provide additional evidence of claimant's residual functional capacity). And "a lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." *Barry*, 606 Fed. App'x at 622. Here, Plaintiff again relies solely on the testimony of the VE that a malodorous worker would not be tolerated long term. For the reasons discussed above, reliance on this testimony is misplaced. And just as the testimony did not undermine the findings at Step Three, it does not undermine the findings at Step Four.

Further, while the ALJ found that Plaintiff's impairments could reasonably cause his alleged symptoms, some of the claimant's statements concerning the intensity, persistence and

---

[12] The limitation is specifically that Plaintiff can tolerate brief and superficial interactions with coworkers and no interactions with the public. *See* Tr. at 21.

limited effects of such symptoms were not entirely consistent with evidence in the record. For example, Plaintiff admitted that medication and mental health treatment often improved his symptoms. *See* Ex. 14F, Tr. at 635, 650, 706–07; Ex. 16F, Tr. at 751, Ex. 24F, Tr. at 905; Ex. 26F, Tr. at 912–13. Because Plaintiff's symptoms improved with compliance with medication and treatment regimens, the ALJ found that they were inconsistent with a level of severity that would preclude Plaintiff from performing any work activity. *See* Tr. at 24. Additionally, even when Plaintiff struggled with his hygiene, he continually engaged in volunteer efforts that demonstrated his ability to interact with others. Tr. at 113–14, 905. The record further contains a plethora of treatment notes in which providers deemed Plaintiff to have no limitations in his activities of daily life. *See* Tr. at 636, 642, 646, 706, 745, 748, 860, 869, 870, 888. Accordingly, the ALJ determined "[Plaintiff's]…malodorous and disheveled appearance at some mental health visits…but his cooperative demeanor at mental health visits, lack of delusions…and ability to volunteer with his father…limits him to brief and superficial interactions with coworkers and no interactions with the public." Tr. at 27.

Although Plaintiff disagrees with the Commissioner's finding, he advances no argument that the ALJ's RFC determination is not supported by substantial evidence. Rather, he seeks an alternative outcome on the same record evidence. It is not, however, the role of the Court to review the record *de novo*. *See generally Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Brault*, 683 F.3d at 448 (the Court can reject the Commissioner's findings "only if a reasonable factfinder would *have to conclude otherwise*") (internal quotation marks and citation omitted). The Court's standard of review is "so deferential that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*,

692 F.3d 118, 127 (2d Cir. 2012). Because the ALJ's findings are supported by substantial evidence, there was no error at Step Four.

3. The ALJ Properly Considered Medical-Opinion Evidence

The parties agree that because Plaintiff filed his application for benefits before March 27, 2017, the "treating physician rule," codified in 20 C.F.R. §§ 404.1527 and 416.927, applies to his claim. Under Section 404.1527, the Administration will give "controlling weight" to a treating source's medical opinion on the issues of nature and severity of impairments as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2). If controlling weight is not appropriate, an ALJ must take an additional step to determine how much weight, if any, to give the opinion in accordance with the "*Burgess* factors," discussed in greater detail below. *See Ferraro v. Saul*, 806 F. App'x 13, 14 (2d Cir. 2020). At both steps in the inquiry, the Administration "will always give good reasons…for the weight" given to a "treating source's medical opinion." *Id.* Nonetheless, certain determinations that are not medical opinions, including the nature and severity of impairments and RFC, are reserved to the Commissioner because they are administrative findings. *See* 20 C.F.R. §§ 404.1527(d)(1)-(2).

Plaintiff argues that the ALJ failed to afford proper weight to his psychiatrist, Dr. Jay Berkowitz, M.D.,[13] and failed to state good reasons for the little weight afforded to his opinion. Defendant maintains that the ALJ properly assessed the medical opinions in the record, including that of Dr. Berkowitz, and sufficiently explained the weight given to each. The Court agrees with the Commissioner.

---

[13] For reasons unbeknownst to either party, the ALJ's decision refers to Dr. Berkowitz as "Dr. Berkcuch." The Defendant submits, however, that the ALJ was aware of Dr. Berkowitz's treating status and evaluated the doctor's opinions as he would have any other treating source. *See* Def. Mot. at 19 n. 6.

12

### A. *The ALJ Afforded Proper Weight to Dr. Berkowitz' Opinion Evidence*

Dr. Berkowitz, Plaintiff's former psychiatrist, offered a medical source opinion in 2016 that ranked Plaintiff as "(1) Always a problem or no ability" in the following activities of daily living: taking care of personal hygiene, interacting appropriately with others, asking questions or requesting assistance, respecting and responding appropriately to others in authority, getting along with others without distracting them or exhibiting behavioral extremes, carrying out multi-step instructions, changing from one simple task to another, persisting in simple activities without interruption from psychological symptoms, handling frustrating appropriately and performing basic activities at a reasonable pace. Tr. at 583–84; 588–589. As a result, Dr. Berkowitz opined that Plaintiff was unable to work. Tr. at 582;587. The ALJ afforded the opinion little weight because (1) he found that Dr. Berkowitz' opinions were inconsistent with his own treatment notes regarding Plaintiff's abnormal thought processes and memory function; (2) evidence from Plaintiff's other mental-health treatment sessions significantly undermined Dr. Berkowitz' opined limitations as to Plaintiff's capacity to perform simple tasks and maintain concentration; and (3) Dr. Berkowitz' statement that Plaintiff was unable to work is a finding reserved to the Commissioner. *See id.*

Plaintiff cites *Perez Garcia v. Berryhill*, No. 3:18-cv-00986 (WIG), 2019 WK 2022191, at *4 (D. Conn May 8, 2019), which stands for the proposition that medical records do not assess functional abilities; rather, they "record, diagnose, and address symptoms, and document treatment paths." This case does not, however, stand for the proposition that inconsistencies between a doctor's notes and his opinion cannot be considered when deciding how much weight to afford the opinion. Indeed, on this issue, the law is clear. The ALJ is permitted to balance medical opinion evidence with the entire record and to question the opinion evidence to the extent the record reveals

13

inconsistencies. *See, e.g., Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) ("Because [the treating physician's] medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight.").

Here, the ALJ acknowledged that Dr. Berkowitz' treatment notes documented ongoing depressive symptoms but observed that they did not reveal any memory or thought process abnormalities.[14] Yet Dr. Berkowitz opined that Plaintiff had serious limitations in being able to perform simple, routine and repetitive tasks or in maintaining concentration, persistence and pace. Indeed, Plaintiff acknowledges that Dr. Berkowitz' treatment notes are "silent on whether there are memory problems or thought process abnormalities" and that they do not include a "detailed mental status examination." Pl. Mot. at 16. In explaining the weight given to Dr. Berkowitz' opinion, the ALJ relied upon the "relatively benign mental status examination findings and the claimant's intact memory skills and coherent and goal-directed thought processes during other mental health visits." Tr. at 25.

The Plaintiff also identifies other entries in the medical records that might be read as consistent with Dr. Berkowitz opinions. However, as discussed above, it is not the role of this Court to review the record *de novo* to determine whether Plaintiff's alternative interpretation of the evidence should be adopted. To the contrary, the weight to be afforded a doctor's opinion in the context of the entire record is a determination left to the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (in which the Court accepted the weight assigned to inconsistent

---

[14] Notably, in 2014, Dr. Berkowitz indicated that Plaintiff had no problems in caring for himself and slight problems with personal hygiene. Tr. at 502. In 2016, however, as mentioned above, Dr. Berkowitz opined that Plaintiff frequently had a problem or had limited ability to care for physical needs and always had a problem with or no ability to take care of personal hygiene. Tr. at 583; 588.

opinion evidence as a proper exercise of the ALJ's discretion) (quotations and citations omitted). Accordingly, the Court will not disturb the ALJ's resolution of conflicting evidence in this record. *See id.*[15]

### B. The ALJ Provided "Good Reasons" in Compliance with the Burgess Factors

Plaintiff's final argument regarding Dr. Berkowitz' medical opinion evidence is that the ALJ failed to consider the "*Burgess* factors," which provide categories for consideration when an ALJ evaluates treating-source opinions. The *Burgess* factors are: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *See Selian*, 708 F.3d at 418 (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). An ALJ's failure to explicitly apply the *Burgess* factors is a procedural error, and without otherwise provided good reasons for the weight assignment, the case will be remanded. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019). Nevertheless, Courts are to affirm the ALJ's decision when a "searching review of the record" confirms that the "substance of the treating physician rule was not traversed." *Id.* at 96. In other words, if the record otherwise provides "good reasons" for assigning "little weight" to the treating physician's opinion, the ALJ's decision should be affirmed. *Gibson v. Saul*, 20-cv-00145 (KAD), 2021 WL 371577, at *9 (D. Conn. Feb. 3, 2021); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (finding that because a physician's opinions "were not particularly informative and were not consistent with those of several other medical experts," they were not entitled to controlling weight). Here, the ALJ acknowledged Dr.

---

[15] Although the Plaintiff does not address the ALJ's third reason for affording little weight to Dr. Berkowitz' opinion, the Court does so briefly. Dr. Berkowitz' conclusion that Plaintiff was unable to work is not a determination that can be made by him. "A doctor's designation of a party as disabled begins the disability inquiry, it does not end it." *Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008). Instead, the "ultimate determination of whether a person has a disability within the meaning of the Act belongs to the Commissioner." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015).

Berkowitz' opportunity to see and treat the Plaintiff but then described the inconsistencies between the opinion and a significant number of record entries. The Court finds that the ALJ provided good reasons, supported by the record, for assigning little weight to Dr. Berkowitz' opinion. And as such, the "substance of the treating physician rule was not traversed," and a remand to the Commissioner is not warranted.

**Conclusion**

For the foregoing reasons, the Plaintiff's Motion for Judgment on the Pleadings, ECF No. 22, is DENIED and the Commissioner's Motion to Affirm, ECF No. 31, is GRANTED. The Clerk of the Court is directed to enter Judgment in favor of Defendant and close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of April 2022.

                                           */s/ Kari A. Dooley*
                                           KARI A. DOOLEY
                                           UNITED STATES DISTRICT JUDGE